UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-21505-UU

LODESTAR ANSTALT,

    Plaintiff,

v.

BACARDI & COMPANY LIMITED,
BACARDI U.S.A., INC., BACARDI
LIMITED,

    Defendants.

## PLAINTIFF LODESTAR ANSTALT'S OPPOSITION TO DEFENDANT BACARDI LIMITED'S MOTION TO DISMISS

**I.    INTRODUCTION**

There is a serious question whether this case was properly transferred to the Southern District of Florida under 28 U.S.C. § 1404, which requires that personal jurisdiction exist in this transferee forum as to all Defendants. The fact that Defendant Bacardi Limited ("Bacardi Ltd.") now moves to dismiss for lack of personal jurisdiction is strong evidence that transfer was improper and the case is not properly before this Court. Plaintiff therefore has separately filed a motion for reconsideration of the transfer order in the Central District of California. Plaintiff also has filed a Motion to Stay this action in Florida (Dkt. No. 73), pending a ruling on the reconsideration motion.

To the extent it is determined that the case was properly transferred to this District, Bacardi Ltd.'s motion to dismiss should be denied. Plaintiff filed its Complaint in California. It is true that Plaintiff made no specific allegations concerning whether personal jurisdiction was proper in Florida. Bacardi Ltd., however, has subsequently waived any objection to personal jurisdiction, and is estopped from challenging personal jurisdiction in this Court. To the extent this case was properly transferred, and this Court does not believe that Bacardi Ltd. has waived personal jurisdiction or is estopped from challenging personal jurisdiction, Plaintiff seeks leave

1

to conduct jurisdictional discovery from Bacardi Ltd. and seeks leave to amend its Complaint following completion of that discovery.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts claims of federal trademark infringement (based on a claim of reverse confusion) and unfair competition under the Lanham Act, California state statutory unfair competition, and California state common law unfair competition against three Bacardi entities: (1) Bacardi & Company Limited, (2) Bacardi U.S.A., Inc., and (3) Bacardi Limited. (Complaint, Dkt. No. 1 at ¶ 5.)

### A.    Plaintiff Lodestar Anstalt And Its UNTAMED Marks

Plaintiff is an independent developer and distributor of beverages, including whiskey and rum along with other beverage products. (Dkt. No. 1 at ¶¶ 10-14.) To protect its unique identity, Plaintiff obtained U.S. Registration Nos. 4,033,238 and 4,033,239 for the wordmark UNTAMED and a mark containing design and word elements (collectively the "UNTAMED marks"), which issued on October 4, 2011. (*Id.* at ¶¶ 8-9.) Plaintiff began using the UNTAMED marks for Irish whiskey in International Class 33 in the United States in 2009, and has continuously used the marks throughout the United States since then, including through use of the wordmark UNTAMED with rum products. (*Id.* at ¶¶ 10-12.)

Plaintiff has a proud history producing quality Irish products, and its UNTAMED marks are a tribute to its Irish roots. (*Id.* at ¶¶ 13, 26.) Plaintiff's innovative UNTAMED marks tell the story of the Wild Geese, the name given to the Irish Diaspora who were forced to leave Ireland following the Treaty of Limerick in 1691. (*Id.*) Plaintiff's advertising of the UNTAMED marks focuses on the theme of defiance and freedom in the face of exile. (*Id.*)

### B.    Defendants and Their Adoption Of The BACARDI UNTAMEABLE Mark

Defendant Bacardi Limited, a much larger entity than Plaintiff, purports to be "the largest privately held spirits company in the world." (Dkt. No. 1 at ¶ 15.)

In November 2013, more than two years after Plaintiff's UNTAMED marks issued and four years after Plaintiff began using the UNTAMED marks in the United States, Defendants initiated their own substantial marketing campaign featuring the mark "BACARDI

UNTAMEABLE." (Dkt. No. 1 at ¶ 20.) Defendants' use began after it had actual knowledge of Plaintiff's use of the UNTAMED marks on rum products. (*Id.* at ¶¶ 26, 29-30.) Defendants' mark and advertising campaign came after Defendants attended a trade show in Europe where Plaintiff featured its UNTAMED marks and advertising campaign. (*Id.*)

Defendants' use is associated with rum, the same alcohol product Plaintiff has used for its wordmark UNTAMED in the United States, and uses the same marketing and branding themes that Plaintiff uses. (Dkt. No. 42 at p. 8[1]; Dkt. No. 1 at ¶¶ 23, 26-29.) Defendants' BACARDI UNTAMEABLE mark conveys a nearly identically themed story, including overcoming the Bacardi family's exile from Cuba in the 1960's in the wake of the Communist revolution. (*Id.*) Defendants' themes of exile and freedom are the same themes used in conjunction with Plaintiff's marks. (*Id.*)

As to Bacardi Ltd., Plaintiff specifically alleges that Bacardi Ltd. is the parent company of Bacardi U.S.A., Inc. and Bacardi & Company Limited, and controls the marketing efforts of Defendants. (Dkt. No. 1 at ¶¶ 3-4, 15-19.) Plaintiff further pleads, based on a 2014 corporate report publicly available from Bacardi Ltd, that Bacardi Ltd. operates under a "number of holding companies, trading subsidiaries and operating units." (*Id.* at ¶ 16.) Plaintiff alleges that Defendants' marketing strategies are "controlled by parent company Bacardi Limited at least through its 'Bacardi Global Marketing Principles'" and that "Bacardi Limited is responsible for training its commercial teams and employees on marketing principles and for holding employees accountable for complying with marketing principles, including taking corrective actions for violations of its marketing principles." (*Id.* at ¶ 17.) Plaintiff alleges that in Bacardi Limited's publicly available corporate report, it states that it has "robust processes in place to review and approve marketing materials" for Bacardi products and also has a "marketing compliance approval process" around their advertising campaigns. (*Id.* at ¶ 18.) Plaintiff alleges that parent company Bacardi Limited is the "entity which enforces its global marketing principles for the Bacardi companies, including enforcing that '[a]ll Bacardi companies and employees must

---

[1] Unless otherwise stated, all references to the page numbers for documents filed with the Court are taken from the Court's ECF header and not the internal page number of the document

comply with the laws . . . applicable to their marketing and promotional practices' including U.S. federal law such as the Lanham Act and California law" and that Bacardi Limited is also responsible for ensuring that 'none of [its] communications attempt to mislead [its] consumers." (*Id.* at ¶ 19.)

In addition, as described below, Defendants themselves have submitted a sworn declaration attesting that all three Bacardi entities collectively use the subject BACARDI UNTAMEABLE mark in the U.S., and all three Bacardi entities collectively launched the advertising campaign for the mark. (*See* Dkt. No. 44 at ¶¶ 1, 5-8.)

### C. Defendants' Mark Creates a Likelihood of Reverse Confusion

Plaintiff alleges that Defendants' use of its house mark "Bacardi" in combination with UNTAMEABLE constitutes reverse confusion and has caused substantial damage to Plaintiff. (Dkt. No. 1 at ¶¶ 27-28 and Prayer for Relief ¶ 2.) Reverse confusion occurs when a later user's (i.e., Defendants) advertising and promotion so swamps the earlier user's (i.e., Plaintiff) reputation in the market that customers are likely to confuse the earlier user's goods as those of the later user. 4 McCarthy on Trademarks and Unfair Competition § 23:10 (4th ed. June 2017 update).

Here, Defendants' use is merely a combination of its own house mark "BACARDI" and a slightly different conjugation of Plaintiff's pre-existing mark for UNTAMED, on the same class of goods as Plaintiff and directed to the same customers and potential customers to tell a nearly identically-themed story. (Dkt. No. 1 at ¶¶ 27-28.) Defendants' use of BACARDI UNTAMEABLE creates a likelihood that when Plaintiff's UNTAMED marks are used by Plaintiff, relevant consumers will incorrectly assume that Plaintiff's goods are related to, sponsored by, or affiliated with Defendants. (*Id.*)

### D. Defendants Previously Argued That Personal Jurisdiction Against Bacardi Ltd. Is Properly Asserted In This District

On March 21, 2017, Defendants filed a motion to transfer venue from the Central District of California to this District on behalf of all three Bacardi entities. (Dkt. No. 42 at pp. 2, 7.) Defendants requested transfer pursuant to 28 U.S.C. § 1404(a). (*Id.*) Defendants represented

4

that: "[a]s a threshold matter, this action could have been brought in the United States District Court for the Southern District of Florida **because the requirements for subject matter jurisdiction, personal jurisdiction, and proper venue are satisfied**." (*Id.* at p. 11 (emphasis added).)

Defendants lumped together and collectively defined "Bacardi" to refer to all three Bacardi entities. (*Id.* at p. 7.) Defendants claimed that "the Southern District of Florida **could exercise personal jurisdiction over Bacardi** because Bacardi U.S.A.'s principal place of business in the U.S. is Miami, Florida" (*Id.* at p. 11 (emphasis added)). Defendants also submitted a sworn declaration from Bacardi U.S.A. (Dkt. No. 44) that also lumped all three Bacardi entities together as "Bacardi," and admitted that:

- all three Bacardi entities were using the subject BACARDI UNTAMEABLE mark (Dkt. No. 44 at ¶ 5) (emphasis added);
- "all of Bacardi's documents, records and files relating to its use and application to register the BACARDI UNTAMEABLE mark in the U.S. and the corresponding sales information is located in Florida" (*Id.* at ¶ 6) (emphasis added);
- "Virtually all of the executives of Bacardi and its affiliates involved in the development, launch, marketing and sales related to the BACARDI UNTAMEABLE campaign and Bacardi's use of the mark in the U.S. are based in either Western Europe . . . or Southern Florida (from where the U.S. campaign was launched)" (*Id.*) (emphasis added); and
- "Bacardi's witnesses" are located in Florida (*Id.* at ¶ 7) (emphasis added).

The Central District of California granted Defendants' motion to transfer venue to this district on April 21, 2017. (Dkt. No. 49.) As Defendants had done, the Court grouped together the three Bacardi entities, and referred to them collectively as "Bacardi." The Court accepted as true the Defendants' contention that "this case could have been brought in the Southern District of Florida." (*Id.* at p. 4.) The Court's Order stated that the "Court agrees and Plaintiff does not dispute that venue would be proper in the Southern District of Florida." (*Id.*) "Accordingly, the Court's analysis focuses on which forum would serve the convenience of the parties and witnesses and whether the interests of justice favor transfer." (*Id.*) The Court concluded that

transfer is appropriate, inter alia, "[b]ecause this action could have been brought in the Southern District of Florida." (*Id.* at p. 9.)

### III. BACARDI LTD. HAS WAIVED ANY PERSONAL JURISDICTION DEFENSE BY SEEKING TRANSFER TO THIS COURT UNDER 28 U.S.C. § 1404

#### A. Prior To Transfer, Defendants Argued That The Southern District Of Florida Has Personal Jurisdiction Over Each Defendant

In seeking to transfer venue to this district, Defendants claimed (as they were required) that this Court has personal jurisdiction <u>over each defendant</u>. Because Defendants have represented that personal jurisdiction is proper over each defendant (including Bacardi Ltd.), they have waived any objection based on personal jurisdiction.

##### 1. In seeking a transfer of venue, Defendants had the burden to prove that the Southern District of Florida had personal jurisdiction over all of the Defendants

As the party seeking to transfer to this Court, Defendants had the burden under 28 U.S.C. § 1404(a) to prove that this Court (the transferee court) had personal jurisdiction over all of the Defendants at the time the case was filed. *Metz v. U.S. Life Ins. Co. in City of N.Y.* 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) ("Analysis under § 1404 is two-fold. First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). **This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper** if the plaintiff had filed the action in the district to which transfer is sought.") (emphasis added); *Pacific Coast Marine Windshields v. Malibu Boats*, No. 1:11-cv-01594 LJO-BAM, 2011 WL 6046308, at *3 (E.D. Cal. Dec. 5, 2011) ("An action 'might have been brought' in a district if that district has: (1) subject matter jurisdiction over the claims; (2) **personal jurisdiction over the parties**; and (3) is a proper venue.") (emphasis added); *Brosnan v. Experian Holdings, Inc.*, Case No. 16-cv-06508-SI, 2017 WL 565077, at *2 (N.D. Cal. Feb. 13, 2017) ("The party moving for transfer must first establish subject matter jurisdiction, personal jurisdiction, and venue in the transferee district.") (citing *Metz*, 674 F. Supp. 2d at 1145.)

This Court has reached the same conclusion. "To prevail on a motion to transfer, a district court may transfer any civil action to any other district or division where it might have been brought. The moving party must therefore establish that an alternative forum is available. An alternative forum exists where **jurisdiction is proper, venue is proper and the parties are amenable to service of process in the transferee forum**." *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F.Supp.2d 1274, 1285 (S.D. Fla. 2012) (internal citations and quotations omitted) (emphasis added).

Further, Defendants were required to prove personal jurisdiction in this Court <u>for each defendant</u>. *See Pacific Coast Marine Windshields*, 2011 WL 6046308, at *3 ("It was the defendants' burden, as the moving party, to prove to the Middle District of Florida that the Eastern District of California had personal jurisdiction **over each defendant** and that venue was proper in this district.") (emphasis added); *Brosnan,* 2017 WL 565077, at *2 ("The [transferee court] must also have personal jurisdiction **over the defendants**.") (emphasis added); *NCO Fin. Sys. v. General Bar, Inc.*, Case No. 1:09 CV 2653, 2011 WL 3490114, *3 (N.D. Ohio Aug. 10, 2011) ("venue must have been proper in the transferee district and the transferee court must have had jurisdiction **over all the defendants**.") (emphasis added).

Transfer cannot be permitted by mere allegations that the Southern District of Florida would be a sufficient forum as to some (but not all) of the Defendants. *See NCO Fin. Sys.*, 2011 WL 3490114 at *7 (motion to transfer venue denied because moving defendant did not demonstrate that the transferee court had personal jurisdiction over all defendants). If there is not personal jurisdiction over all the defendants, the moving party cannot prove that the case "might have been brought" in that court.

>   2.   **Defendants' Prior Statements Should Be Deemed a Waiver to any Challenge to Personal Jurisdiction**

In its motion to transfer venue, Defendants acknowledged that they had the burden under 1404(a) to establish that the Southern District of Florida is a district in which the case "might have been brought." (*See* Dkt. No. 42 at p. 10 ("The analysis for transfer requires two determinations. First, the Defendants must establish that the matter 'might have been brought' in

7

the district to which transfer is sought.  28 U.S.C. § 1404(a)").)

To satisfy their burden, Defendants argued that <u>this Court</u> had subject matter jurisdiction, personal jurisdiction, and was a proper venue for each defendant.  Specifically, Defendants contended:

> As a threshold matter, this action could have been brought in the United States District Court for the Southern District of Florida **because the requirements for subject matter jurisdiction, personal jurisdiction, and proper venue are satisfied.**

(Dkt. No. 42 at p. 11) (emphasis added.)

In its motion, Defendants defined "Bacardi" to refer to all three Bacardi entities.  (*Id.* at p. 7.)  Defendants specifically claimed that "the Southern District of Florida **could exercise personal jurisdiction over Bacardi** because Bacardi U.S.A.'s principal place of business in the U.S. is Miami, Florida."  (*Id.* at p. 11 (emphasis added).)

Defendants' transfer brief did not merely claim that the Southern District of Florida could exercise jurisdiction over only Bacardi U.S.A.  Defendants specifically alleged that "the Southern District of Florida <u>could exercise personal jurisdiction over Bacardi</u>."  (*Id.* at p. 11.)  Defendants defined the term "Bacardi" in multiple locations in its briefing and supporting declarations to mean all three Bacardi entities.  (*See* Dkt. No. 42 at pp. 2, 7; Dkt. No. 43 at ¶ 1; Dkt. No. 44 at ¶ 1; Dkt. No. 47 at p. 5.)

Defendants consistently and intentionally used the defined term "Bacardi" throughout its briefing to provide contentions on behalf of all three Bacardi entities:

- "<u>Bacardi</u> then began using the BACARDI UNTAMEABLE mark to promote the sale of its products in November 2013."  (Dkt. No. 42 at p. 8) (emphasis added).
- "During the first four months of the launch of the advertising campaign that features the BACARDI UNTAMEABLE mark, <u>Bacardi</u> spent over $14 million in advertising . . ."  (*Id.* at pp. 8-9) (emphasis added).
- "Virtually all of the executives of <u>Bacardi</u> and its affiliates involved in the development, launch, marketing and sales related to the BACARDI UNTAMEABLE campaign and

8

- Bacardi's use of the mark in the U.S. are based in either Western Europe . . . or Southern Florida . . ." (*Id.* at p. 9) (emphasis added).

- "all of Bacardi's documents, records and files relating to its use and application to register the BACARDI UNTAMEABLE mark in the U.S. and the corresponding sales information is located in Florida." (*Id.*) (emphasis added).

- "Here, almost all of Bacardi's witnesses . . . are located in Southern Florida." (*Id.* at p. 13) (emphasis added).

- "While Bacardi products are promoted and sold in California . . .") (*Id.* at p. 16) (emphasis added).

- "Bacardi uses a Miami-based distributor, Southern Wine & Spirits to sell its product to retailers." (*Id.*) (emphasis added).

- "Bacardi has featured the BACARDI UNTAMEABLE mark in national media campaigns . . ." (*Id.* at p. 17) (emphasis added).

- "much of the documentary evidence in this case is located at Bacardi's headquarters in Southern Florida . . .") (*Id.* at p. 18) (emphasis added).

In addition, Defendants submitted a sworn declaration in support of its motion to transfer by Ms. Lynett Exposito, a paralegal for Bacardi U.S.A., Inc. (Dkt. No. 44). Ms. Exposito herself collectively referred to "Defendants" and "Bacardi" as all three Bacardi entities. (*Id.* at ¶ 1.) Ms. Exposito made a number of contentions on behalf of all three entities, including many of the same allegations cited above. (*Id.* at ¶¶ 5-8.)

In their transfer briefing, Defendants knew how to distinguish their use of the collective defined term "Bacardi" from their use of the names of the individual Bacardi entities. Defendants intentionally used the terms "Bacardi U.S.A.," "Bacardi, Ltd.," and "Bacardi & Co." distinctly from their use of the term "Bacardi." Defendants' personal jurisdiction allegations were clearly represented on behalf of all three defendants.[2]

---

[2] While Defendants stated in a footnote that Bacardi Ltd. "has no connection to California or to any of the claims at issue in this action" (Dkt. No. 42 at p. 12, FN 2), Defendants never asserted that personal jurisdiction in the Southern District of Florida was improper as to Bacardi Ltd.

Defendants' own sworn witness declaration filed in the Central District of California stated that <u>all three Bacardi entities</u> were using the subject BACARDI UNTAMEABLE mark (Dkt. No. 44 at ¶ 5), that "all of <u>Bacardi's</u> documents, records and files relating to <u>its</u> use and application to register the BACARDI UNTAMEABLE mark in the U.S. and the corresponding sales information <u>is located in Florida</u>" (*Id.* at ¶ 6) (emphasis added); that "[v]irtually all of the executives of <u>Bacardi</u> and its affiliates involved in the development, launch, marketing and sales related to the BACARD UNTAMEABLE campaign and <u>Bacardi's</u> use of the mark in the U.S. are based in either Western Europe . . . or <u>Southern Florida (from where the U.S. campaign was launched)</u>" (*Id.*) (emphasis added); and that "<u>Bacardi's witnesses</u>" are located in Florida (*Id.* at ¶ 7) (emphasis added).

Accordingly, this Court should find that Bacardi Ltd. has waived any personal jurisdiction defense in this District.

**B.**     **Bacardi Ltd. Is Estopped From Asserting That The Southern District Of Florida Has No Personal Jurisdiction**

In addition to Bacardi Ltd.'s prior representation that personal jurisdiction was proper in this Court (which is an independent basis for denying Bacardi Ltd.'s motion), Bacardi Ltd. is also estopped from now arguing that this Court has no personal jurisdiction. Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (citation omitted).

Courts typically will apply judicial estoppel if: (1) the party's present position is "clearly inconsistent" with an earlier position of the party; (2) the party succeeded in persuading a court to accept the earlier position, "so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead;" and (3)

"the party advancing the inconsistent position would derive an unfair advantage" against the party seeking estoppel. *Robinson v. Tyson Foods., Inc.*, 595 F. 3d 1269, 1273 (11th Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. at 750-51).

In the Eleventh Circuit, two primary factors are used to establish judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson*, 595 F. 3d at 1273 (citation omitted). However, "these factors are not exhaustive; rather, courts must always give due consideration to the circumstances of the particular case." *Id.*

### 1. **Bacardi Ltd.'s current position that this Court lacks personal jurisdiction is clearly inconsistent with its prior position before the Central District of California**

As described above, Defendants previously advocated to the Central District of California that personal jurisdiction over each defendant is proper in this Court, including Bacardi Ltd. Defendants' previous admissions were supported by the sworn declaration of Ms. Exposito. (Dkt. No. 44.)

Following transfer, Bacardi Ltd. now takes the clearly inconsistent position that the Southern District of Florida "has no personal jurisdiction over Bacardi Ltd." (Dkt. No. 67 at p. 2) (emphasis added).

Bacardi Ltd. seeks dismissal from the very jurisdiction in which it sought to be transferred into. Bacardi Ltd.'s current position before this Court is contrary to its prior position presented to, and accepted by, the Central District of California.

### 2. **Prior to transfer, Defendants succeeded in persuading the Central District of California that this Court has personal jurisdiction over Bacardi Ltd.**

The Central District of California's April 21, 2017 Motion to Transfer Order first considered whether the case could have been brought in the Southern District of Florida. The Court relied on Defendants' representations that the Southern District of Florida was such a

forum. Specifically, the Court's Order stated: "Bacardi argues that this case <u>could have been brought in the Southern District of Florida</u> because it is where 'a substantial part of the events . . . giving rise to the claim occurred' or, alternatively, because it is where at least one 'defendant is subject to the court's personal jurisdiction with respect to such action.'" (Dkt. No. 49 at p. 4)

The Court then stated that it "agrees and Lodestar does not dispute that venue would be proper in the Southern District of Florida." (*Id.*)  The Court's Order thus proceeded to the second step of the transfer analysis, whether transfer "would serve the convenience of the parties and witnesses and whether the interests of justice favor transfer." (*Id.*)

The Court ultimately concluded that transfer is appropriate, inter alia, "[b]ecause this action could have been brought in the Southern District of Florida." (*Id.* at p. 9.)

But for Defendants' representations that the Southern District of Florida was a proper forum (i.e., with personal jurisdiction over all Defendants), the Central District of California could not have granted the requested transfer.

### 3. **Bacardi Ltd. would derive an unfair advantage from its adverse personal jurisdiction positions**

If it is determined that transfer was proper, Bacardi Ltd. will receive an unfair advantage if this Court permits Bacardi Ltd. to now challenge personal jurisdiction, contrary to their prior representations. Defendants will receive the undue benefit of having the case transferred to their preferred district, which under Section 1404, can presumably exercise personal jurisdiction over them, and yet still be permitted to seek dismissal as to Bacardi Ltd. Having benefitted from the transfer, Bacardi Ltd. should not be permitted to change its position to now seek dismissal from the case. Because Defendants have taken polar opposite positions regarding personal jurisdiction in this forum over Bacardi Ltd., this Court should find that Bacardi Ltd. is judicially estopped from arguing that this Court lacks personal jurisdiction.

### C. **Plaintiff has sufficiently plead its claims against Bacardi Ltd.**

When reviewing a motion to dismiss, a court, as a general rule, must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). To survive a

motion to dismiss, the allegations in a complaint merely "must . . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1289 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff has sufficiently plead specific facts regarding parent company Bacardi Ltd.'s control over the branding and marketing efforts of Defendants. ( Dkt. No. 1 at ¶¶ 3-4, 15-19.) The Complaint further pleads that Bacardi Ltd. is responsible for devising and implementing Defendants' BACARDI UNTAMEABLE marketing plan. (*Id.* at ¶ 21.) Plaintiff has sufficiently alleged that Defendants, including Bacardi Ltd., have committed trademark infringement, and in particular, have caused reverse confusion by hijacking Plaintiff's UNTAMED mark through Defendants' adoption and use of its BACARDI UNTAMEABLE mark. (*Id.* at ¶¶ 20-28). The relevant consuming public has now come to associate Plaintiff's UNTAMED mark with Bacardi. (*Id.* at ¶ 28.)

Defendants' own sworn witness declaration in support of its motion to transfer lumped all three Bacardi entities together as the defined term "Bacardi" (Dkt. No. 44 at ¶ 1), and swore that <u>all three Bacardi entities collectively</u> were using the subject BACARDI UNTAMEABLE mark (*Id.* at ¶ 5) (emphasis added), that "all of <u>Bacardi's</u> documents, records and files relating to <u>its</u> use and application to register the BACARDI UNTAMEABLE mark in the U.S. and the corresponding sales information <u>is located in Florida</u>" (*Id.* at ¶ 6) (emphasis added); that "[v]irtually all of the executives of <u>Bacardi</u> and its affiliates involved in the development, launch, marketing and sales related to the BACARD UNTAMEABLE campaign and <u>Bacardi's</u> use of the mark in the U.S. are based in either Western Europe . . . or <u>Southern Florida (from where the U.S. campaign was launched)</u>" (*Id.*) (emphasis added); and that "<u>Bacardi's witnesses</u>" are located in Florida (*Id.* at ¶ 7) (emphasis added).

Bacardi Ltd.'s brief states that "[i]n order to prove trademark infringement or unfair competition the plaintiff must show that the alleged infringer used the mark in commerce." (Dkt. No. 67 at p. 12.) Defendants' own witness attests that each Bacardi entity uses the mark in commerce.

Accordingly, this Court should find that Plaintiff's claims sufficiently state a claim upon

13

which relief can be granted.

### IV. **PLAINTIFF SHOULD BE AFFORDED AN OPPORTUNITY FOR LEAVE TO AMEND AND TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiff filed this Complaint in the Central District of California. Plaintiff did not specifically allege jurisdiction was proper in the Southern District of Florida. To the extent it is determined that this case was properly transferred, and this Court holds that Bacardi Ltd. has not waived or is estopped from asserting a personal jurisdiction defense, Plaintiff requests leave to conduct jurisdictional discovery as to Bacardi Ltd. Jurisdictional discovery is favored where there is a dispute concerning jurisdictional facts. Defendants have offered contradictory facts which warrants jurisdictional discovery here. *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009); *Nissim Corp. v. ClearPlay, Inc.*, 351 F. Supp. 2d 1343, 1350-51 (S.D. Fla. 2004).

If this Court holds that in addition, Plaintiff has not alleged facts sufficient to state a claim, Plaintiff should be afforded an opportunity for leave to amend. The Eleventh Circuit prefers the "district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).

### V. **CONCLUSION**

Plaintiff requests that this Court stay the action pending a ruling on Plaintiff's motion for reconsideration of the transfer order filed in the Central District of California. If that Court determines that transfer is proper, this motion should be denied because Bacardi Ltd. has waived any personal jurisdiction defense and is estopped from challenging personal jurisdiction. If this Court holds that Bacardi Ltd. did not waive personal jurisdiction, and is not judicially estopped from challenging personal jurisdiction, Plaintiff should have an opportunity to conduct jurisdictional discovery and to amend its Complaint.

DATED: May 19, 2017                        Respectfully submitted,

                                                     **FRIEDLAND VINING, P.A.**

        s/Jaime Rich Vining
By:  **David K. Friedland**
Florida Bar No. 833479
Email:  dkf@friedlandvining.com
**Jaime Rich Vining**
Florida Bar No. 030932
Email:  jrv@friedlandvining.com
9100 S. Dadeland Blvd., Suite 1620
Miami, FL 33156
(305) 777-1720 – telephone
(305) 456-4922 – facsimile

and

**G. Warren Bleeker** (*pro hac vice*)
Email:  wbleeker@lrrc.com
**Gary J. Nelson** (*pro hac vice*)
Email:  gnelson@lrrc.com
**Drew Wilson** (*pro hac vice*)
Email:  dwilson@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
655 North Central Avenue, Suite 2300
Glendale, CA 91203
(626) 795-9900– telephone
(626) 577-8800– facsimile

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

    I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Andrea L. Calvaruso**
**Kenneth David Kronstadt**
**Michael C. Lynch**
Kelley Drye and Warren LLP
101 Park Avenue
New York, NY 10178
Email: acalvaruso@kelleydrye.com
Email: kkronstadt@kelleydrye.com

Email: mlynch@kelleydrye.com
*Service via CM/ECF*


**Robert Harris**
Stack Fernandez & Harris, P.A.
1001 Brickell Bay Drive
Suite 2650
Miami, FL 33131
Email: rharris@stackfernandez.com
*Service via CM/ECF*

                                                  s/Jaime Rich Vining
                                                    Jaime Rich Vining